UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

GERALD IKEZI and ANTHONY UKAZU,

                         Plaintiffs,

           v.

THE CITY OF NEW YORK, THE NEW YORK
POLICE DEPARTMENT, POLICE OFFICER
STEPHEN CENTORE and SERGEANT ROBERT
MERCER,

                         Defendants.

**MEMORANDUM & ORDER**
14-CV-5905 (MKB)

------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiffs Gerald Ikezi and Anthony Ukazu commenced the above-captioned action on October 8, 2014, against Defendants the City of New York, the New York Police Department ("NYPD"), Police Officer Stephen Centore and Sergeant Robert Mercer. (Compl. ¶¶ 4–7, Docket Entry No. 1.) Plaintiffs' claims arise from a traffic stop during which Officer Centore and Sergeant Mercer stopped Ikezi due to alleged traffic infractions and detained Plaintiffs while the officers investigated the validity of the vehicle's license plate. (*Id.* ¶¶ 10–15.) Plaintiffs bring claims for false arrest and excessive force under 42 U.S.C. § 1983, false arrest under New York state law, and *respondeat superior*. (*Id.* ¶¶ 16–24.) Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Defs. Mot. for Summ. J. ("Defs. Mot."), Docket Entry No. 30; Defs. Mem. of Law in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 31.) For the reasons discussed below, the Court grants Defendants' motion and dismisses the Complaint in its entirety.

## I. Background

In March of 2014, Ikezi was working part-time in New York for an Indiana-based car dealer, Prolific Customs, which conducted business in New York. (Deposition of Gerald Ikezi ("Ikezi Dep.") 29–30, Docket Entry No. 32-1.) Ikezi's "boss," Darryl Williams, asked Ikezi to move one of the company's vehicles from Jamaica Avenue in Queens, New York, to a more secure location in New York City. (*Id.* at 29-30, 60–61.) Williams gave Ikezi the keys to the car, the registration, proof of insurance and an Indiana transporter license plate[1] to place on the car while Ikezi transported the car. (*Id.* at 58–59, 62.)

On March 6, 2014, Ikezi picked up the car from Jamaica Avenue. (*Id.* at 60–61, 65.) He attached the license plate to the rear bumper and proceeded to drive the car to his home. (*Id.* at 63.) Ikezi intended to park the car in the driveway of his home in Addisleigh Park until he received further instructions from Williams. (*Id.*) While Ikezi was driving the car, his friend Ukazu sent him a text message telling him that he was in the area. *Id.* Ikezi stopped and picked up Ukazu. (*Id.* at 63–64.)

The parties dispute the time at which the officers initiated the traffic stop. According to the officers, they initiated the stop at approximately 9:30 PM. (Deposition of Stephen Centore ("Centore Dep.") 6, Docket Entry No. 32-5.) According to Plaintiffs, the officers initiated the stop earlier than 9:30 PM. Ikezi recalls that the stop occurred between "7:30[] and 8:30 [PM]," (Affidavit of Gerald Ikezi ("Ikezi Aff.") ¶¶ 5, 11, Docket Entry No. 32-1), and Ukazu recalls that

---

[1] Indiana transporter license plates are available for Indiana residents and Indiana business owners who are seeking to "transport[] . . . a vehicle from one place to another by the drive away or tow away methods." Indiana Bureau of Motor Vehicles State Form 37028 (R8 / 9-15), *available at* https://forms.in.gov/download.aspx?id=4961 (last visited Mar. 30, 2017).

the stop occurred between "8:00 and 8:30 [PM]," (Affidavit of Anthony Ukazu ("Ukazu Aff.") ¶ 10, Docket Entry No 37-2).[2]

The parties also dispute whether the officers had a valid reason for initiating the stop. According to the officers, Ikezi was driving on Jamaica Avenue with a passenger and approaching the intersection at Francis Lewis Boulevard when they observed him "veer" out of his lane and change lanes without signaling. (Centore Dep. 5–9; Defs. Deposition of Sergeant Mercer ("Defs. Mercer Dep.") 11, Docket Entry No. 32-6.) Based on that observation, Officer Centore initiated the traffic stop because he believed Ikezi may have been driving while intoxicated. (Centore Dep. 9.) According to Ikezi, he was driving on Jamaica Avenue with Ukazu as a passenger when he observed police lights and sirens in his rearview mirror. (Ikezi Dep. 66.) He never changed or swerved out of his lane and was unaware of the reason the officers initiated the traffic stop. (Ikezi Aff. ¶¶ 5, 11.)

After Ikezi stopped the vehicle, the officers approached the vehicle — Officer Centore approached the driver's side of the vehicle where Ikezi sat and Sergeant Mercer approached the passenger side of the vehicle where Ukazu sat. (Ikezi Dep. 66–67; Centore Dep. 12–13.) As the officers were approaching the vehicle, they noticed the Indiana transporter plate on the car and believed the license plate was forged or stolen because the license plate appeared to be a sticker affixed to a metal backing. (Centore Dep. 8–9; Defs. Mercer Dep. 23–25.) After he approached the vehicle, Officer Centore asked Ikezi for his license, registration and proof of insurance for the vehicle. (Ikezi Dep. 67–69.) Based on his experience, the lack of an alcohol odor or any other

---

[2] For the reasons discussed in Part II.c.i.1.C.(2), the Court adopts the officers' recollection as to the time and duration of the traffic stop and investigatory detention.

signs of intoxication, Officer Centore concluded that Ikezi was not intoxicated. (Centore Dep. 31–32.)

While Officer Centore questioned Ikezi, Sergeant Mercer focused on investigating the validity of the license plate. (Pls. Deposition of Sergeant Mercer ("Pls. Mercer Dep.") 24–27, Docket Entry No. 37-4.) Sergeant Mercer detained Ukazu to safely complete the investigation and to prevent Plaintiffs from possibly fleeing. (*Id.*) Sergeant Mercer asked Ukazu for his identification and asked him to step out of the vehicle. (*Id.*) Sergeant Mercer then handcuffed Ukazu and directed him to sit on the curb. (*Id.* at 26.)

When Officer Centore observed Sergeant Mercer detaining Ukazu, he proceeded to do the same with Ikezi — he asked Ikezi to step out of the vehicle, handcuffed him, and directed him to sit on the curb. (Centore Dep. 14–15.) According to Plaintiffs, they requested that the officers handcuff them with their hands in front of their body because they both had shoulder injuries that could be aggravated if they were handcuffed with their hands behind their backs. (Ikezi Dep. 69; Ukazu Aff. ¶¶ 6–7.) According to Plaintiffs, the officers ignored their requests, (*id.*), but according to the officers, Plaintiffs never made such requests, (Centore Dep. 23).

After handcuffing Plaintiffs, the officers began checking Plaintiffs' identification and the paperwork related to the vehicle.[3] (Ukazu Dep. 44.) The officers removed the license plate from the vehicle to inspect it more closely, and began peeling the laminated portion of the license plate from the metal backing. (*Id.*) Ikezi requested that the officers stop damaging the license plate

---

[3] Because it was cold outside, the officers asked Plaintiffs if they wanted to sit in the patrol car while the officers completed the investigation. (Ikezi Dep. 74; Ukazu Dep. 45.) Plaintiffs initially rejected the offer, but shortly thereafter they accepted the offer because they were cold. (*Id.*) The officers placed Plaintiffs in the patrol car and continued their investigation. (Ikezi Dep. 77.)

because it belonged to Williams. (*Id.*) Sergeant Mercer called the NYPD's automobile crime division, the NYPD's automobile loss unit and the Indiana state police to determine whether the license plate was valid, and ultimately determined that the license plate was valid. (Defs. Mercer Dep. 26.) According to the officers, at approximately 10:00 PM, Plaintiffs were uncuffed and released. (Centore Dep. 22–23.) Ikezi agrees that the detention ended at approximately 10:00 PM. (Ikezi Aff. ¶¶ 5, 11.) Ukazu recalls that detention ended at approximately 10:00 or 10:30 PM. (Ukazu Aff. ¶ 10.)

As a result of being handcuffed behind his back, Ikezi's shoulder injury was exacerbated and he continues to suffer from pain and a decreased range of motion in his shoulder. (Ikezi Aff. ¶ 12; Ikezi Dep. 95–97.) Ukazu suffered at the time of the incident and continues to suffer "severe pain" in his shoulder as a result of the officers handcuffing him behind his back. (Ukazu Aff. ¶ 14.)

## II. Discussion

### a. Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Davis v. Shah*, 821 F.3d 231, 243 (2d Cir. 2016); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not

sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Claims against the NYPD

Plaintiffs named the NYPD as a Defendant. (Compl. ¶ 7.) However, the NYPD is a non-suable state entity. Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter, chap. 17 § 396. This provision "has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued." *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159–60 (2d Cir. 2008) (per curiam); *see also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City."); *Morris v. N.Y.C. Police Dep't*, 59 F. App'x 421, 422 (2d Cir. 2003) (affirming dismissal of claims asserted against the NYPD due to non-suable-entity status). Accordingly, the Court dismisses Plaintiffs' claims against the NYPD.

### c. Section 1983 claims

Plaintiffs allege that the officers violated their Fourth and Fifth Amendment rights when the officers (1) conducted an investigatory stop and detention without reasonable suspicion, (2) arrested them without probable cause and (3) used excessive force in the course of the arrest. (Compl. ¶¶ 16–17.)

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting

42 U.S.C. § 1983). To establish a viable section 1983 claim, a plaintiff must show "the violation

of a right secured by the Constitution and laws of the United States" and that "the alleged

deprivation was committed by a person acting under color of state law." *Vega v. Hempstead*

*Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks

omitted).

Defendants move for summary judgment, arguing that Plaintiffs have failed to show that

the officers' conduct violated Plaintiffs' constitutional rights and, in the alternative, that the

officers are entitled to qualified immunity. (Defs. Mem. 6–20.) The Court addresses

Defendants' arguments below.

### i. False arrest

Defendants argue that Plaintiffs' false arrest claims fail as a matter of law because, based

on Ikezi's traffic infractions and on the appearance of the license plate: (1) the officers had

reasonable suspicion to initiate an investigatory stop and to conduct an investigatory detention,

and, (2) in the alternative, the officers had probable cause to arrest Plaintiffs. (Defs. Mem. 6–

14.) Plaintiffs argue that the officers did not have reasonable suspicion for an investigatory stop

or detention, nor did they have probable cause for an arrest. (Pls. Mem. in Opp'n to Defs. Mot.

("Pls. Opp'n") 9–26, Docket Entry No. 34.)

"Under New York law, 'to prevail on a claim of false arrest a plaintiff must show that

(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise

privileged.'" *Nzegwu v. Friedman*, 605 F. App' x. 27, 29 (2d Cir. 2015) (quoting *Jocks v.*

*Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003)). "A [section] 1983 claim for false arrest is

substantially the same as a claim for false arrest under New York law." *Gonzalez v. City of*

*Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). Accordingly, the Court considers Plaintiffs' state and federal false arrest claims under the section 1983 framework.

The Court first considers whether Defendants had reasonable suspicion to conduct an investigatory stop and detention and then separately considers whether they had probable cause.

### 1. Reasonable suspicion

Defendants argue that the officers had reasonable suspicion to initiate an investigatory stop based on Ikezi's traffic infractions and reasonable suspicion to conduct an investigatory detention based on their observation of the license plate and their belief that it may have been forged or stolen. (Defs. Mem. 9–14.) Plaintiffs argue that the investigatory stop and detention were unlawful because the officers lacked the reasonable suspicion necessary to initiate a traffic stop, nothing about the license plate gave the officers reason to believe that it was forged or fictitious, the officers had no reason to handcuff them during the course of the detention, and the officers unnecessarily prolonged the duration of the detention. (Pls. Opp'n 18–20.) Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that: (1) there are disputed issues of material fact as to whether the initial investigatory stop was constitutional, (2) the officers had reasonable suspicion to conduct the investigatory detention based on their observation that the license plate appeared to be forged or fictitious, and (3) the scope and duration of the investigatory detention were reasonable.

The Fourth Amendment protects individuals against unreasonable searches and seizures. *United States v. Jenkins*, 452 U.S. 207, 212 (2d Cir. 2006). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure under the Fourth Amendment." *Id.* (quoting *Whren v. United States*, 517 U.S. 806, 809–10 (1996)). Police officers may temporarily detain a person, absent

probable cause, in limited circumstances. *United States v. Bailey*, 743 F.3d 322, 336 (2d Cir. 2014) (citing *Terry v. Ohio*, 392 U.S. 1, 22–25 (1968)); *see also United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016) (holding that the Fourth Amendment allows a police officer to conduct an investigatory detention if the officer has reasonable suspicion (citing *Bailey*, 743 F.3d at 332)); *United States v. Singletary*, 798 F.3d 55, 59 (2d Cir. 2015) (holding that "in appropriate circumstances and in an appropriate manner," it is constitutionally permissible "temporarily to detain a person to investigate possible criminality even in the absence of . . . probable cause" (quoting *Bailey*, 743 F.3d at 331–32)). Specifically, where a police officer has a reasonable articulable basis to suspect that the individual "is committing or has committed a criminal offense," a temporary investigatory stop and detention may be reasonable under the Fourth Amendment. *Bailey*, 743 F.3d at 336.

Reasonable suspicion, like probable cause, is determined objectively based on the information available to the police officers at the time and not on their subjective state of mind. *United States v. Awan*, 607 F.3d 306, 317 (2d Cir. 2010). While the requisite suspicion "is not a high threshold," *United States v. Lawes*, 292 F.3d 123, 127 (2d Cir. 2002), it is "more than a hunch," and requires "specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting wrongdoing." *Bailey*, 743 F.3d at 336 (citations and internal quotation marks omitted) (first citing *Terry*, 392 U.S. at 21; and then citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)); *United States v. Rivera*, 353 F. App'x. 535, 536 (2d Cir. 2009).

A valid investigatory stop based on reasonable suspicion must be "justified at its inception." *United States v. Lopez*, 321 F. App'x. 65, 67 (2d Cir. 2009) (quoting *Terry*, 392 U.S. at 20); *see also United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013) ("Any events that occur

after a stop is effectuated cannot contribute to the analysis of whether there was reasonable suspicion to warrant the stop in the first instance."). However, when deciding whether a plaintiff has a viable section 1983 claim for unconstitutional investigatory detention, where an officer made an initial investigatory stop without reasonable suspicion, courts may consider whether the officer developed reasonable suspicion for the investigatory detention based on conduct the officer observed after the initial unlawful stop. *See Jenkins,* 478 F.3d at 91 n.16 (holding that "the fruit of the poisonous tree doctrine cannot be invoked to support a [s]ection 1983 claim" for false arrest where the plaintiff argued that arrest was unlawful because the initial stop was unlawful (citing *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999)); *Ellsworth v. Wachtel*, No. 11-CV-0381, 2013 WL 140342, at *8 (N.D.N.Y. Jan. 11, 2013) (dismissing a section 1983 false arrest claim where the plaintiff argued that an arrest following a unlawful stop was unconstitutional because "the fruit of the poisonous tree doctrine is not available to assist a [section] 1983 claimant"); *Lawrence v. City Cadillac*, No. 10-CV-3324, 2010 WL 5174209, at *5 (S.D.N.Y. Dec. 9, 2010) (collecting cases). In such cases, the officer's reasonable suspicion for the investigatory detention must nevertheless meet the Fourth Amendment requirements. *See id.*; *see also Bailey*, 743 F.3d at 333–41 (analyzing whether the officers had reasonable suspicion for the initial investigatory stop and then analyzing whether the officer had reasonable suspicion to continue the stop by conducting an investigatory detention). An investigatory stop and detention must also comport with the Fourth Amendment's reasonableness standard, which requires the stop and the detention to be no longer or more intrusive than necessary. *Bailey*, 743 F.3d at 336.

### A. Reasonable suspicion to initiate the investigatory stop

Defendants argue that the officers had reasonable suspicion to initiate the traffic stop because Ikezi failed to maintain his lane and changed lanes without signaling. (Defs. Mem. 9–10.) Plaintiffs contend that Ikezi never changed or swerved out of his lane and therefore the

officers lacked reasonable suspicion for the stop.  (Pls. Opp'n 16, 18.)  Because there is a

disputed issue of material fact as to whether Ikezi committed any traffic infractions to give rise to

reasonable suspicion for the initial investigatory stop, the Court cannot determine as matter of

law that the initial investigatory stop was constitutional.

It is well established that police officers may only initiate an investigatory stop when they

have reasonable suspicion that "criminal activity may be afoot," meaning that the stop "must be

justified at its inception."  *Freeman*, 735 F.3d at 95–96.  Here, the officers assert that they had

reasonable suspicion to initiate the traffic stop because Ikezi failed to maintain his lane and

changed lanes without signaling.  (Defs. Mem. 9–10; Centore Dep. 5–9; Defs. Mercer Dep. 11.)

Plaintiffs contend that Ikezi never changed or swerved out of his lane.  (Pls. Opp'n 16, 18; Ikezi

Aff. ¶¶ 5, 11.)  In deciding Defendants' summary judgment motion, the Court must draw all

inferences in Plaintiffs' favor to determine if there are disputed issues of material fact.  *See Pinto*,

221 F.3d at 398 (holding that courts must "resolv[e] all ambiguities and draw[] all inferences in

favor of the non-moving party" when deciding a motion for summary judgment).  Based on

Plaintiffs' statement of the events, the parties dispute whether the officers had reasonable

suspicion to initiate the traffic stop, and consequently, the Court cannot determine as a matter of

law that the traffic stop was constitutional.  *See Pane v. Gramglia*, 509 F. App'x 101, 104 (2d Cir.

2013) ("To [the] extent we accept the facts alleged by [the plaintiff] . . . , we are obliged to

conclude that no objectively reasonable officer would have believed those facts raised a

reasonable suspicion of criminal activity sufficient to support a stop." (citation omitted)).

### B.  Reasonable suspicion to conduct an investigatory detention

Defendants argue that they had reasonable suspicion for an investigatory detention

because Plaintiffs possessed a license plate that appeared to be forged or fictitious.  (Defs. Mem.

9–10.)  Plaintiffs argue that nothing about the appearance of the license plate gave the officers reasonable suspicion to believe that it was forged or fictitious.  (Pls. Opp'n 11–14, 17.)  In addition, Plaintiffs appear to argue that the license plate may not serve as the basis for the officers' reasonable suspicion to conduct the investigatory detention because the officers did not observe the license plate until they had already initiated the traffic stop, which stop was allegedly unlawful because Ikezi did not commit any traffic infractions that provided the officers with reasonable suspicion to initiate stop.  (*Id.*)  Plaintiffs' arguments are unavailing.

Where a police officer has a reasonable articulable basis to suspect that the individual "is committing or has committed a criminal offense," a temporary investigatory detention may be reasonable under the Fourth Amendment.  *Bailey*, 743 F.3d at 336.  Here, based on the officers' observance of the license plate, which they believed was forged or fictitious, they had reasonable suspicion to conduct an investigatory detention.

New York Penal Law § 170.20 ("Section 170.20") provides that "[a] person is guilty of criminal possession of a forged instrument . . . when, with knowledge that it is forged and with intend to defraud, deceive or injure another, he utters or possesses a forged instrument."  N.Y. Penal Law § 170.20.  At the time the officers approached the vehicle, they believed that Plaintiffs were in possession of a forged or fictitious license plate in violation of Section 170.20 because the license plate was an Indiana transporter license plate that appeared to be a sticker affixed to a metal backing.  (Centore Dep. 8–9; Defs. Mercer Dep. 23–25.)  Based on the characteristics of the license plate, the officers reasonably believed that Plaintiffs were in possession of a forged or fictitious instrument.  *See, e.g.*, *People v. Barona*, 862 N.Y.S.3d 816, 2008 WL 1809691, at *2 (Crim. Ct. Apr. 22, 2008) (noting that it is a violation of Section 170.20 for an individual to possess a forged license plate); *People v. Stephens*, 676 N.Y.S.2d 905, 906–07 (Crim. Ct. 1998)

(finding probable cause for an arrest where the officers observed a New Jersey license plate that "lacked an expiration date and solid edges on the top and bottom, and contained seals with uneven spacing and faded color").

In addition, contrary to Plaintiffs' arguments, the existence of disputed issues of material fact as to the constitutionality of the initial investigatory stop based on Ikezi's assertion that he did not commit any traffic infractions does not negate the officers' reasonable suspicion to conduct the investigatory detention based on their observation of license plate and their reasonable belief that it was forged or fictitious. The well-established rule that conduct occurring after an initial stop cannot justify a subsequent investigatory detention is rooted in the Fourth Amendment doctrine of "fruit of the poisonous tree." *See Terry*, 392 U.S. at 15 ("When such conduct is identified, it must be condemned by the judiciary and its fruits must be excluded from evidence in criminal trials."); *United States v. Simmons*, 560 F.3d 98, 106–07 (2d Cir. 2009) (noting that conduct that occurs after an unreasonable stop may not be considered in assessing the officers reasonable suspicion to initiate the stop and seize evidence because the evidence collected was the unlawful "fruit of a Fourth Amendment seizure"); *United States v. Swindle*, 407 F.3d 562, 572 (2d Cir. 2005) (noting that when an initial investigatory stop is unlawful, any subsequent seizures may be "suppressed as fruit of a poisonous tree"). When a plaintiff brings a section 1983 claim, arguing that the plaintiff's constitutional rights were violated because a police officer developed reasonable suspicion for an investigatory detention after an initial unlawful stop, the fruit of the poisonous tree doctrine does not prohibit courts from considering whether the officer had reasonable suspicion for an investigatory detention based on conduct the officer observed after the initial unlawful stop. *See Jenkins,* 478 F.3d at 91 n.16 (holding that "the fruit of the poisonous tree doctrine cannot be invoked to support a section 1983 claim" for

false arrest where the plaintiff argued that arrest was unlawful because the initial stop was unlawful (citing *Townes*, 176 F.3d at 145)); *Ellsworth*, 2013 WL 140342, at *8 (dismissing a section 1983 false arrest claim where the plaintiff argued that an arrest following an unlawful stop was also unconstitutional because "the fruit of the poisonous tree doctrine is not available to assist a [section] 1983 claimant"); *Lawrence*, 2010 WL 5174209, at *5 (collecting cases). Therefore, the officers' lack of reasonable suspicion for the initial stop is not determinative of whether the officers had reasonable suspicion to detain Plaintiffs based on the officers' later-developed reasonable belief that the license plate was forged or fictitious. *See Jenkins,* 478 F.3d at 91 n.16; *Ellsworth*, 2013 WL 140342, at *8. Here, because the officers observed a license plate that appeared to be a sticker affixed to a metal backing and therefore believed it was forged or fictitious, they had reasonable suspicion to conduct an investigatory detention.

Although the officers had reasonable suspicion to conduct the investigatory detention, the Court must also assess whether the scope and duration of the detention were reasonable. *See Bailey*, 743 F.3d at 336.

### C.    The scope and duration of the investigatory detention

Defendants argue that the scope of the investigatory detention, including the decision to handcuff Plaintiffs, was reasonable because the officers wanted to ensure their safety and prevent Plaintiffs from possibly fleeing while they investigated the validity of the license plate. (Defs. Mem. 10–12.) Defendants also argue that the duration of the investigatory detention was reasonable because it lasted for approximately twenty-five minutes, which was the amount of time the officers needed to complete their investigation of the license plate. (*Id*. at 12–14.) Plaintiffs argue in response that the investigatory detention was unlawful because the officers did not have a legitimate reason to handcuff Plaintiffs while they were investigating the legitimacy

14

of the license plate and because the duration of the investigation was unreasonable.  (Pls. Opp'n 16–20.)

Police officers are permitted to engage in "limited detention" of an individual based on the officers' reasonable suspicion that criminal activity is underway.  *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992) (citing *Terry*, 392 U.S. at 30).  An officer's use of reasonable force to initiate a stop and effectuate an investigatory detention — a less intrusive form of seizure than an arrest — does not turn the investigatory detention into an arrest.  *See United States v. Vargas,* 369 F.3d 98, 101–02 (2d Cir. 2004).  A permissible investigatory detention, however, "may become an unlawful arrest if the means of detention are more intrusive than necessary."  *United States v. Tehrani*, 49 F.3d 54, 61 (2d Cir. 1995) (citations and internal quotation marks omitted); *Vargas*, 369 F.3d at 101.  To determine whether an investigatory detention was more intrusive than necessary, the court looks to several factors, including: "the amount of force used by the police, the need for such force, the number of police officers involved, whether the police suspected the suspect of being armed, the duration of the stop [and detention], the extent to which an individual's freedom of movement was restrained, and the physical treatment of the suspect, including whether handcuffs were used."  *Vargas*, 369 F.3d at 101; *see also United States v. Wiggan*, 530 F. App'x 51, 55 (2d Cir. 2013).  No one factor is determinative; rather, the court must consider "the totality of the circumstances."  *Waldron v. Milana*, 541 F. App'x 5 & n.3 (2d Cir. 2013) (quoting *Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991)); *United States v. Newton*, 369 F.3d 659, 674 (2d Cir. 2004).

**(1)  The scope of the detention**

Defendants argue that the scope of the investigatory detention, including the use of handcuffs, was reasonable under the totality of the circumstances.  (Defs. Mem. 10–12.) Plaintiffs argue that the scope of the investigatory detention was unreasonable because the

officers handcuffed Plaintiffs without a legitimate reason for the handcuffing.  (Pls. Opp'n 17–18.)

"To satisfy the Fourth Amendment's reasonableness requirement, officers conducting [detentions] on less than probable cause must employ the least intrusive means reasonably available to effect their legitimate investigative purposes." *Bailey*, 743 F.3d at 339 (internal quotation marks omitted) (citing *Newton*, 369 F.3d at 674).  When the use of handcuffs or other restraints occurs during investigatory detentions, courts must be mindful that the law "does not operate categorically to authorize or prohibit particular forms of restraint." *Id.*  Therefore, whether the use of handcuffs was reasonable "demands a careful consideration of the circumstances in which [the] challenged restraints were used." *Id.* at 340; *see also Kerr v. Morrison*, 664 F. App'x 48, 52 (2d Cir. 2016).  In assessing whether it was reasonable for an officer to handcuff a suspect during an investigatory detention, courts consider, *inter alia*, the nature of the suspected offense, whether the suspect was armed, the officer's display of force, the officer's belief that the suspects were flight risks, the officer's concern for the safety of the suspects as well as the general public and the number of officers at the scene compared to the number of suspects.  *Bailey*, 743 F.3d at 339; *Newton*, 369 F.3d at 674.  The determinative "question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or pursue it." *Bailey*, 743 F.3d at 340 (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)).

Here, the investigatory detention was based on the officers' observation that the license plate appeared to be a sticker affixed to a metal backing and their belief that Plaintiffs possessed a forged or fictitious license plate.  The officers state that they handcuffed Plaintiffs while they investigated the legitimacy of the license plate because they wanted to prevent Plaintiffs from

possibly fleeing, it was nighttime on a busy street, they wanted to ensure their safety and Plaintiffs' safety and there were only two officers at the scene for the two suspects. (Pls. Mercer Dep. 24–27.) The officers did not display force by brandishing their weapons, and the Plaintiffs were not armed.

While the foregoing facts present a close case as to whether the officers' decision to handcuff Plaintiffs was reasonable, based on the totality of the circumstances, the officers did not act "unreasonably in failing to recognize or pursue" less intrusive methods "to effect their legitimate investigative purposes." *See Bailey*, 743 F.3d at 339–40. First, the officers believed that they stopped Plaintiffs during the commission of an ongoing crime — possession of a forged or fictitious license plate — and decided to handcuff Plaintiffs to prevent them from fleeing and "get[ting] hit by a car" while the officers investigated the validity of the license plate. (*See* Pls. Mercer Dep. 24–27); *Mayes v. Village of Hoosick Falls*, 162 F. Supp. 3d 67, 87–88 (N.D.N.Y. 2016) (finding that officers acted reasonably in handcuffing the unarmed plaintiffs where there were two officers and two suspects at the scene, the officers apprehended the plaintiffs during the possible commission of a non-violent crime and the officers wanted to prevent the suspects from fleeing while they conducted their investigation); *United States v. Gonzalez*, 111 F. Supp. 3d 416, 427 (S.D.N.Y. 2015) (finding that the officers acted reasonably during an investigatory detention when they handcuffed the plaintiffs "to ensure their own safety, the safety of others in the vicinity, and given the potential flight into oncoming traffic, [the defendant's] safety").

Second, the officers' concern for their safety was not unreasonable given that there were two officers and two suspects. *See Mayes*, 162 F. Supp. 3d at 87–88; *United States v. Fiseku*, No. 15-CR-384, 2015 WL 7871038, at *8 (S.D.N.Y. Dec. 3, 2015) (finding that the use of handcuffs was reasonable because "at no point did the number of officers exceed the number [] of detained

suspects"); *cf. Olivera v. Mayer*, 23 F.3d 642, 646 (2d Cir. 1994) (holding that the scope of investigatory detention was unreasonable because, *inter alia*, "the plaintiffs were boxed-in by six police vehicles and outnumbered two-to-one"). Moreover, the Supreme Court has observed that traffic stops, by their very nature, are "especially fraught with danger to police officers." *Johnson*, 555 U.S. at 331 (citation omitted).

Third, while the officers decided to handcuff Plaintiffs, they did not display any other means of force, such as brandishing their weapons. *See Wiggan*, 530 F. App'x at 54 (holding that the use of handcuffs during the investigatory detention was reasonable because, while the officer's decision to handcuff the suspect was intrusive, it was less intrusive than brandishing weapons); *cf. Olivera*, 23 F.3d at 646 (holding that the officers' brandishing of their weapons was a factor that indicated that the investigatory detention was a formal arrest (collecting cases)).

In addition, as explained below, the duration of the stop was reasonable and supports the Court's finding that the investigatory detention, under the totality of the circumstances, was reasonable. *See Tehrani*, 49 F.3d at 61 (holding that the investigatory detention was not unreasonable because the duration of the detention clearly was reasonable).

### (2) The duration of the investigatory detention was reasonable

Defendants argue that duration of the detention was reasonable because it lasted approximately twenty-five minutes and they "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." (Defs. Mem. 13–14 (citation omitted).) Plaintiffs argue that the duration of the investigatory detention was unreasonable because it lasted for approximately one-to-two hours. (Pls. Opp'n 9, 18–20.)

"There is no outside time limitation for a permissible *Terry* [detention] . . . ." *Tehrani*, 49 F.3d at 61 (quoting *United States v. Place*, 462 U.S. 696, 709 (1983)). The lynchpin of the

duration analysis is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Bailey*, 743 F.3d at 336; *see also Tehrani*, 49 F.3d at 61 ("Whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, is crucial." (alteration and internal quotations omitted) (quoting *Sharpe*, 470 U.S. at 686).

The Court first determines the applicable time and duration of the stop and investigatory detention and then addresses whether the duration was reasonable.

### (a) Duration of the investigatory detention

Plaintiffs' assert that the stop and detention lasted one-to-two hours. (Pl. Opp'n 9, 18–20.) Ikezi contends that the officers initiated the stop between "7:30" and "8:30 [PM]" and ended at approximately "10:00 [PM]," (Ikezi Aff. ¶¶ 5, 11); Ukazu contends that the officers initiated the stop between "8:00 and 8:30 [PM]" and that the stop and detention lasted approximately "[two] hours," (Ukazu Aff. ¶ 10). The officers contend that the stop occurred at approximately 9:30 PM and ended at approximately 10:00 PM, (Centore Dep. 6, 22; Pls. Mercer Dep. 27–28).

The undisputed documentary evidence contradicts Plaintiffs' conflicting recollection of the timeline. This evidence includes: (1) a timestamped copy of the dispatcher's report regarding the officers' communications with the NYPD dispatcher, reflecting that the officers initiated the traffic stop at approximately 9:30 PM and ended it at approximately 10:00 PM, (NYPD Dispatcher's Record, Docket Entry No. 32-10); and (2) a timestamped copy of the officers' communications with the NYPD dispatcher showing that, at approximately 10:00 PM, the officers responded to a call for assistance related to another incident at a different location, (Second NYPD Dispatcher's Record, Docket Entry No. 32-14). In addition, other evidence

supports the records of the NYPD Dispatcher as to the time of the incident, including: (1) Ikezi's cellular telephone records showing that he was using his telephone at approximately 8:58 PM, (Ikezi Phone Records, Docket Entry No. 32-12), and (2) Ukazu's cellular telephone records, showing that he was using his telephone at 9:20 PM and again at 9:57 PM, (Uzaku Phone Records, Docket Entry No. 32-13). While Ukazu denies having used his telephone at the times indicated in his telephone records, (Ukazu Aff. ¶ 15), Ikezi does not deny having used his telephone at the times reflected in his telephone records. Moreover, the officers' recollection of the time and duration of the traffic stop and investigatory detention is supported by: (1) Officer Centore's notes in his memo book, which were written shortly after the event, (Centore Memo Book, Docket Entry No. 32-8); (2) Sergeant Mercer's notes in his memo book, also written shortly after the event, (Mercer Memo Book, Docket Entry No. 32-7); and (3) Officer Centore's Stop, Question and Frisk Report Worksheet, (Docket Entry No. 32-11).

Because Plaintiffs' recollection of the timeline is contradicted by the documentary evidence, the Court adopts Defendants' timeline of the stop and investigatory detention. *See Scott v. Harris*, 550 U.S. 372, 378–71 (2007) (adopting the defendants' version of the facts because the plaintiff's version was severely contradicted by the record before the Court); *Harwe v. Floyd*, 545 F. App'x 20, 22 (2d Cir. 2013) ("[A]lthough plaintiffs testified at their depositions that the stop lasted an hour, we agree with the district court that no reasonable jury could credit that account in light of other evidence — from plaintiffs themselves and their cell phone records, as well as from police department records — conclusively showing that the stop lasted no more than half an hour."); *Cole v. City of New York*, No. 10-CV-5308, 2013 WL 781640, at *7 (S.D.N.Y. Mar. 1, 2013) (granting summary judgment motion after accepting the officer's version of the facts because his account was "supported by his sworn deposition testimony, his

memo book from the night of the arrest, [a]rrest [r]eports for [p]laintiff . . . and Field Test reports"); *see also Irons v. Bedford-Stuyvesant Cmty. Legal Servs.*, No. 13-CV-4467, 2015 WL 5692860, at \*25 (E.D.N.Y. Sept. 28, 2015) (accepting defendants' version of the facts on a summary judgment motion because it was "amply supported by contemporaneous documents, including e-mails, budget documents, and board minutes"); *Langenkamp v. N.Y. Univ.*, No. 10-CV-8883, 2014 WL 11350830, at \*3 (S.D.N.Y. Sept. 11, 2014) (finding that the documentary evidence "weighs so heavily against [p]laintiff" that "no reasonable jury" would accept plaintiff's version of the events).

### (b) Reasonableness of the duration of the investigatory detention

The duration and the investigatory detention was reasonable because the officers "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Bailey*, 743 F.3d at 336; *see also Tehrani*, 49 F.3d at 61 ("Whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, is crucial." (alteration and internal quotations omitted) (quoting *Sharpe*, 470 U.S. at 686)).

In *Tehrani*, border patrol agents at an airport in Vermont conducted an investigatory stop and detention of two men, Tehrani and Alaei, on suspicion that the two men had illegally entered the United States. 49 F.3d at 56. When Alaei was questioned by one of the agents, he presented a valid Canadian citizenship card, but he was unable to explain how he entered the United States. *Id.* Based on that information, the agent suspected that Alaei illegally entered the United States. *Id.* at 56–57. The agent took Alaei to a police office in the airport and began making calls to confirm his immigration status. *Id.* at 57. After further questioning, Alaei admitted that he entered the United States by misleading border patrol agents at the Canada–United States border crossing. *Id.* The agent then administratively arrested Alaei. *Id.* Approximately thirty minutes

elapsed from the time the agent first began questioning Alaei and Alaei's arrest. *Id.* at 57–58.

Alaei moved to suppress statements made and evidence obtained prior to the administrative

arrest, arguing that the duration of the investigatory detention transformed it into a *de facto*

arrest. *Id.* at 57. After the trial court denied the motion, Alaei pled guilty on condition that he

could appeal the court's denial of his motion to suppress. *Id.* at 57–58. On appeal, in holding

that the duration of the investigatory stop and detention was reasonable and had not been

transformed into a *de facto* arrest, the Second Circuit noted that the agent "proceeded to make

diligent telephone inquiries about [Alaei's] immigration status immediately after the[]

detention." *Id.* at 61. The Court also "decline[d] to hold that a thirty minute detention based on

reasonable suspicion is, *per se*, too long[,]" relying on case law from numerous circuit courts that

had held that thirty-minute investigatory detentions were reasonable. *Id.* (collecting cases).

Here, upon approaching the vehicle, the officers observed the license plate that appeared

to be a sticker affixed to a metal backing and believed that it was forged or fictitious. (Centore

Dep. 8–9; Defs. Mercer Dep. 23–25.) Based on that observation, the officers detained Plaintiffs

while they investigated the legitimacy of the license plate. (*Id.*) Sergeant Mercer "proceeded

[immediately] to make diligent telephone inquiries" to confirm the legitimacy of the license

plate, *see Tehrani*, 49 F.3d at 61, by calling the NYPD automobile crimes division, the NYPD

automobile loss unit, and the Indiana state police. (Defs. Mercer Dep. 26.) Sergeant Mercer

learned that the license plate was valid and that Ikezi lawfully possessed it, and upon learning

that it was valid, released Plaintiffs. (*Id.*; Centore Dep. 22.) In total, the stop, the detention and

the investigation lasted approximately twenty-five minutes. As in *Tehrani*, the duration of the

investigatory detention was reasonable. *See* 49 F.3d at 61; *cf. Giles v. Repicky*, 511 F.3d 239, 246

(2d Cir. 2007) (holding that the duration of an investigatory detention was unreasonable where

the officer believed the plaintiff was in possession of a stolen license plate, but after completing his thirty-minute investigation and discovering the license plate was valid, continued to detain plaintiff for an additional hour).  Contrary to Plaintiffs' arguments, (Pls. Opp'n 19–20), under *Tehrani*, the relevant inquiry as to duration analysis is whether the officers "diligently pursue[] a means of investigation that was likely to confirm or dispel their suspicions quickly," not the duration of the detention alone.  *See* 49 F.3d at 61.  Here, the officers' conduct satisfies that standard.[4]

In sum, because the Court finds that, based on the totality the circumstances, the investigatory stop and the scope and duration of the investigatory detention were not unreasonable, the investigatory detention did not ripen into an unlawful arrest that would have required the officers to have probable cause.  Plaintiffs' false arrest claims therefore fail.[5]

---

[4] Even accepting Plaintiffs' assertions that the stop and detention lasted for a longer period of time, the Court finds that the duration of the stop and detention was reasonable because the undisputed evidence before the Court is that immediately after the officers detained Plaintiffs, they attempted to verify the validity of the license plate and released Plaintiffs immediately upon discovering the license plate was valid.  (*See* Defs. Mercer Dep. 26; Centore Dep. 22–23); *United States v. Bailey*, 743 F.3d 322, 336 (2d Cir. 2014) (holding that the duration of a *Terry* stop and detention is reasonable as long as the officers pursue a means of investigation that is likely to "confirm or dispel their suspicions quickly").  Plaintiffs have not argued or presented any evidence to contradict the officers' deposition testimony that after the stop, they took immediate steps to verify the license plate and released Plaintiffs after doing so.

[5] The Court notes that in *Bailey*, the Second Circuit held that an officer's decision to handcuff a suspect during the course of an investigatory detention may be unreasonable if the officer does not have reason to believe that the suspect is armed and dangerous.  *Bailey*, 743 F.3d at 340.  The Second Circuit, however, also held that "in other cases, the government may be able to point to circumstances supporting a reasonable basis" for an officer to handcuff an unarmed suspect.  *See id.*  As explained above, while it is a close case, the Court believes the officers' decision to handcuff Plaintiffs was not unreasonable under the circumstances.  In any event, even assuming the officers' decision to handcuff Plaintiffs was unreasonable under the circumstances, Plaintiffs' false arrest claims fail, because as discussed further below, the Court finds that the officers had probable cause for an arrest based on their observations of the license plate and their reasonable belief that it may have been forged or fictitious.  *See also Gonzalez v. City of*

## 2.  Probable Cause

Defendants argue in the alternative that Plaintiffs' false arrest claims fail because the officers also had probable cause to detain Plaintiffs while they investigated whether the Indiana transporter license plate was fictitious.  (Defs. Mem. 6–9.)  Plaintiffs argue that disputed facts and credibility issues preclude summary judgment.  (Pls. Opp'n 9–26.)  Plaintiffs dispute the officers' reasons for initiating the traffic stop and the condition of the license plate when the stop was initiated.  (Pls. Opp'n 9–15.)  Plaintiffs also argue that the license plate did not give the officers probable cause to detain them.  (*Id.*)  Viewing the evidence and undisputed facts in the light most favorable to Plaintiffs, the Court concludes that Defendants had probable cause to detain Plaintiffs and investigate the license plate.

The Fourth Amendment protects individuals from unreasonable searches and seizures by law enforcement officials.  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  A law enforcement official violates the Fourth Amendment's protections if he or she arrests someone without probable cause.  *Id.*  Conversely, "probable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)).  "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime . . . .'"  *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *Gonzalez*, 728 F.3d at 155 (same).  The reviewing court "must consider [only] those facts available to the officer at the time of the arrest and immediately

*Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013)  ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under [section] 1983." (citation omitted)).

before it." *Stansbury*, 721 F.3d at 89 (alteration in original) (quoting *Panetta v. Crowley*, 460

F.3d 388, 395 (2d Cir. 2006)). The question is whether the facts known to the arresting officer, at

the time of the arrest, objectively provided probable cause to support the arrest. *Gonzalez*, 728

F.3d at 155. "Where [the] question of whether [the] arresting officer had probable cause was

predominantly factual in nature," summary judgment is inappropriate. *Weyant*, 101 F.3d at 852

(alteration and internal quotation marks omitted) (quoting *Moore v. Comesanas*, 32 F.3d 670, 673

(2d Cir. 1994).

Here, based on the undisputed facts, Defendants are entitled to summary judgment on the

false arrest claims. On the night in question, the officers detained Plaintiffs based on their

observation of the Indiana transporter license plate that appeared to be a sticker affixed to a metal

backing and their reasonable belief that the license plate on the car was forged or fictitious,

which is a violation of New York Penal Law Section 170.20. (Pls. Mercer Dep. 24–27; Centore

Dep. 14–15.) Under Section 170.20, an officer has probable cause if the "physical characteristics

of the allegedly forged document" lead the officer to believe that an individual is knowingly in

possession of a forged or fictitious document. *People v. Solyhanzadeh*, 899 N.Y.S.2d 62, 2009

WL 2138928, at *3 (Crim. Ct. July 8, 2009). For the officer to infer knowledge, the document

must appear forged to the "untrained eye." *Barona*, 862 N.Y.S.3d 816, 2008 WL 1809691,

at *2.

The officers' uncontested deposition testimony that they observed the license plate and it

looked like a sticker affixed to a metal backing, supports a finding that the license plate would

appear forged to the "untrained eye." (*See* Pls. Mercer Dep. 26; Centore Dep. 8–9, 14–15; Ikezi

Dep. 77); *Barona*, 862 N.Y.S.3d 816, 2008 WL 1809691, at *2 (finding probable cause to charge

an individual for possessing a forged license in violation of Section 170.20 based on the officer's

observation that the license "was made of hard, brittle plastic, whereas New York State Identification Cards are made of flexible material[,] and [it] contained an eight-digit identification number, whereas authentic identification numbers consist of nine digits"); *People v. Owles*, 742 N.Y.S.2d 783, 785–86 (Crim. Ct. 2002) (finding probable cause to charge an individual for possessing a forged NYPD license plate in violation of Section 170.20 based on the officers' observation that the plate "lacked the large police department shield found in the center of the authentic version of such plaques, the pre-printed serial number, the registration number and vehicle identification numbers"); *Stephens*, 676 N.Y.S.2d at 906–07 (finding probable cause for an arrest where the officers observed a New Jersey license plate that "lacked an expiration date and solid edges on the top and bottom, and contained seals with uneven spacing and faded color"); *see also Lawrence v. City Cadillac,* No. 10-CV-3324, 2010 WL 5174209, at *5 (S.D.N.Y. Dec. 9, 2010) (holding that an officer had probable cause for an arrest where the plaintiff had placed a handwritten license plate in his car window). Therefore, the officers' observations of the license plate, which appeared to be a sticker affixed to a metal backing, sufficiently established probable cause to detain Plaintiffs.[6]

---

[6] Plaintiffs also argue that the officers should not have arrested Plaintiffs absent "exigent circumstances." (Pls. Opp'n 14, 21.) "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime . . . .'" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013). As articulated above, the officers had probable cause to arrest Plaintiffs based on the appearance of the license plate. Exigent circumstances are not required. *See Swartz*, 704 F.3d at 111.

In addition, Plaintiffs appear to argue that because Ikezi never veered out of his lane or changed lanes without signaling, their detention was unlawful because the initial stop was unlawful. (Pls. Opp'n 6, 11, 15, 22.) However, as discussed above, the fruit of the poisonous tree doctrine does not negate the fact that the officers had probable cause sufficient to defeat Plaintiffs' false arrest claims based on their observations of what appeared to be a forged or fictitious license plate, notwithstanding that the officers observed the license plate after initiating the traffic stop for an unsafe lane change that may have been unlawful. *See Jenkins v. City of*

In sum, the Court finds that, based on the appearance of the Indiana transporter license plate, the officers had reasonable suspicion to detain Plaintiffs while they investigated the validity of the Indiana transporter license plate, and the scope and duration of the investigatory detention was reasonable.  In addition, the Court finds that the officers had probable cause to detain Plaintiffs based on the appearance of the license plate.  Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiffs' false arrest claims.

### ii. Excessive force

Defendants argue that Plaintiffs' allegations are insufficient to show that the officers used excessive force because Plaintiffs complain of only minor injuries resulting from the officers *de minimis* use of force and Plaintiffs never sought medical treatment for their alleged injuries. (Defs. Mem. 15–18.)  Plaintiffs argue that the officers used excessive force when handcuffing Plaintiffs because Plaintiffs explained that they had shoulder injuries, Plaintiffs requested to be handcuffed in front of their bodies instead of behind their backs, the officers ignored their

---

*New York*, 478 F.3d 76, 91 n.16 (2d Cir. 2007) (holding that "the fruit of the poisonous tree doctrine cannot be invoked to support a section 1983 claim for false arrest" where the plaintiff argued that arrest was unlawful because the initial stop was unlawful); *Matthews v. City of New York*, 889 F. Supp. 2d 418, 434 (E.D.N.Y. 2012) ("Because the fruit of the poisonous tree doctrine is unavailable for [s]ection 1983 claimants, the firearm seized by the [i]ndividual [d]efendants pursuant to the allegedly unlawful traffic stop and search may provide probable cause for plaintiffs' arrest for purposes of their false arrest and imprisonment claims."); *Lawrence v. City Cadillac*, No. 10-CV-3324, 2010 WL 5174209, at *5 (S.D.N.Y. Dec. 9, 2010) (collecting cases).

Finally, Plaintiffs argue that the officers lacked probable cause to detain Ukazu because he was not driving the vehicle.  (Pls. Opp'n 15–16.)  Plaintiffs' argument lacks merit because the doctrine of constructive possession imputes possession of the license plate to Ukazu and the officers lacked knowledge as to who may have forged the license plate.  (Pls. Mercer Dep. 44); *see Pickering v. DeFrance*, No. 14-CV-01207, 2016 WL 5799293, at *10 (D. Conn. Sept. 30, 2016) ("[P]robable cause exists to arrest all the passengers of a vehicle for constructive possession of contraband . . . where . . . no information singles out one individual as the possessor." (first citing *Maryland v. Pringle*, 540 U.S 366, 373 (2003); and then citing *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008)).

handcuffing requests, and given the nature of the suspected offense, there was no need for the detention. (Pls. Opp'n 22–24.)

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer" in the course of an arrest. *Tracy v. Freshwater*, 623 F.3d. 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Because the Fourth Amendment's test of reasonableness is one of "objective reasonableness," the inquiry is fact-specific and requires a balancing of various factors. *Id*. When determining whether an officer used excessive force, a court must analyze the totality of the circumstances facing the officer and consider: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96 (citations omitted); *see also Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 463 (E.D.N.Y. 2010) ("[T]he fact finder must consider the totality of the circumstances, including 'the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest.'" (citations omitted)). However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Tracy*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 397). Courts must "evaluate the record from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Id.* (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 396).

Drawing all inferences in Plaintiffs' favor, the evidence presents disputed issues of material fact as to whether the officers used unreasonable force. First, Plaintiffs told the officers that they had shoulder injuries and requested that the officers handcuff them in front of their bodies. Defendants dispute Plaintiffs' assertion that they asked the officers to handcuff them in

front of their bodies.  (Defs. Mem. 17.)  However, because Defendants are the moving party, the Court accepts Plaintiffs' assertion that they made the request.  *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015) (holding that the disputed issues of fact must be viewed in the light most favorable to the non-moving party).

"There is a general consensus among courts to have addressed the issue that otherwise reasonable force used in handcuffing suspect[s] may be unreasonable when used against suspect[s] whom the officers know to be injured . . . [and] are cooperating in their arrests." *Beckles v. City of New York*, 492 F. App'x 181, 182–83 (2d Cir. 2012) (first citing *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993); and then citing *Littrell v. Franklin*, 388 F.3d 578, 585–86 (8th Cir. 2004)); *see also Cancel v. NYPD Comm'r Raymond Kelly*, No. 13-CV-6007, 2016 WL 590230, at *5 (S.D.N.Y. Feb. 11, 2016) (finding that "otherwise reasonable force used in handcuffing suspect may be unreasonable when used against a suspect whom the officer knows to be injured, . . . [and] who [is] cooperating in [his] arrest[]" (quoting *Beckles*, 492 F. App'x at 182)); *Bettis v. Bean*, No. 14-CV-113, 2015 WL 5725625, at *12 (D. Vt. Sept. 29, 2015) (same); *Pinter v. City of New York*, 976 F. Supp. 2d 539, 560 n.82 (S.D.N.Y. 2013) (same).  After the officers initiated the traffic stop and proceeded to detain Plaintiffs, Plaintiffs asked the officers to handcuff them in front of their bodies instead of behind their backs because they had shoulder injuries.  (Ikezi Aff. ¶ 12; Ukazu Aff. ¶¶ 6–7.)  The officers ignored Plaintiffs' requests and handcuffed them behind their backs.  (*Id.*)  There is no evidence in the record that Plaintiffs resisted their detentions.  Moreover, as discussed below, Plaintiffs suffered some injury as a result of the handcuffing.  Accordingly, viewing the facts and making inferences in Plaintiffs' favor, a reasonable jury could find that the officers used unreasonable force when they

handcuffed Plaintiffs behind their backs after Plaintiffs advised the officers of their injuries and requested to be handcuffed in front of their bodies. *See Beckles*, 492 F. App'x at 182–83.

Second, contrary to Defendants' arguments, Plaintiffs injuries are not *de minimis*. "[T]he Second Circuit has indicated that a very minimal injury is sufficient to trigger potential liability for excessive force." *Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 176–77 (E.D.N.Y. 2016) (alterations and internal quotation marks omitted) (citing *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009) (citing *Robison v. Via*, 821 F.2d 913, 923–24 (2d Cir. 1987))); *see also Hayes v. N.Y.C. Police Dep't*, 212 F. App'x. 60, 62 (2d Cir. 2007) ("[W]e have permitted claims to survive summary judgment where the only injury alleged is bruising" (citations omitted)); *Robison*, 821 F.2d at 924 ("While [the plaintiff] did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the force used was excessive, the failure is not fatal to her claim. If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."); *Sash v. United States*, 674 F. Supp. 2d 531, 539 (S.D.N.Y. 2009) ("[W]hile the extent of the injury suffered is one fact to be considered when determining whether the use of force was excessive, an injury need not be serious in order to give rise to a constitutional claim of excessive force." (alteration, citations and internal quotation marks omitted)); *Lucky v. City of New York*, No. 03-CV-1983, 2004 WL 2088557, at *7 (S.D.N.Y. Sept. 20, 2004) (denying defendants' motion for summary judgment on plaintiff's excessive force claim and finding that "[w]hile [the plaintiff's] injuries appear to be *de minimis*, his statements that he was shoved in the police car in a manner that injured his shoulder" created a disputed issue of material fact).

Here, Ikezi states that, as a result of being handcuffed behind his back, his shoulder injury was exacerbated and he continues to suffer from pain and a decreased range of motion in his shoulder. (Ikezi Aff. ¶ 12; Ikezi Dep. 95–97.) Ukazu states that he suffered at the time of the incident and continues to suffer "severe pain" in his shoulder as a result of the officers handcuffing him behind his back. (Ukazu Aff. ¶ 14.) Plaintiffs' sworn statements regarding the extent of their injuries, the fact that they were suspected of committing a nonviolent offense, and the fact that they did not resist arrest could lead a reasonable jury to find that the officers' use of force was excessive. *See Beckles*, 492 F. App'x at 182–83; *Lucky*, 2004 WL 2088557, at *7; *see also Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 473 (E.D.N.Y. 2016) (denying summary judgment because "although [plaintiff] indicated that his dislocated shoulder was attributable to his earlier fight with [someone else], . . . a reasonable jury may find that the officer's actions exacerbated his preexisting injury" (citation omitted)).

Finally, although Plaintiffs submit no medical-records evidence to support the existence and extent of their injuries, the lack of such evidence is not fatal to their excessive force claim. *See Robison*, 821 F.2d at 924 ("While [the plaintiff] did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the force used was excessive, this failure is not fatal to her claim."); *Gomez v. City of New York*, No. 05-CV-2147, 2007 WL 5210469, at *7 (S.D.N.Y. May 28, 2007) (holding that a lack of documented injuries is an issue properly considered by a jury in determining whether an arresting officer's use of force was excessive).

### d. Qualified immunity

Defendants argue, in the alternative, that Plaintiffs' excessive force claims against the officers should be dismissed on the basis of qualified immunity.[7] (Defs. Mem. 18–19.) The Court agrees.

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia*, 779 F.3d at 92 (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). As to whether the right is clearly established, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 92 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). "[T]he relevant question is whether a reasonable officer could have believed [his or her conduct] to be lawful, in light of clearly established law and the information [he or she] possessed." *Id.* at 115 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Defendants

---

[7] Because as explained above, Plaintiffs fail to show that the officers lacked reasonable suspicion or probable cause for the arrest and therefore fail to show the officers violated their rights under the Fourth Amendment, the Court does not address whether the officers are entitled to qualified immunity on the false arrest claims. *See Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (When a defendant officer . . . invokes qualified immunity to support a motion for summary judgment, a court must first consider [whether] . . . the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violate[d] a constitutional right[.] If the answer to this question is no, there is no necessity for further inquiries concerning qualified immunity." (internal quotation marks omitted) (quoting *Saucier*, 533 U.S. at 201); *see also Powell v. City of New York*, No. 14-CV-09937, 2016 WL 4159897, at *11 (S.D.N.Y. July 14, 2016) ("There is no need to linger on the qualified immunity analysis in this case, since, as shown above, no constitutional violation can be made out, even on a favorable view of the parties' submissions." (internal quotation marks omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

bear the burden of proof to establish that qualified immunity exists. *Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012); *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011).

Defendants are entitled to qualified immunity as to Plaintiff's excessive force claims based on a lack of clearly established law. As discussed above, the Court finds that, drawing all reasonable inferences in Plaintiffs' favor, a reasonable jury could find that the officers violated Plaintiffs' Fourth Amendment right to be free from unreasonable force in the course of a detention. In making that finding, the Court relies on a Second Circuit case, which held that "[t]here is a general consensus among courts to have addressed the issue that otherwise reasonable force used in handcuffing suspect[s] may be unreasonable when used against suspect[s] whom the officers know to be injured . . . [and] are cooperating in their arrests." *Beckles*, 492 F. App'x at 182–83 (first citing *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993); and then citing *Littrell v. Franklin*, 388 F.3d 578, 585–86 (8th Cir. 2004)).

In the realm of qualified immunity, however, the Court finds that it may not rely on *Beckles* as clearly established law as *Beckles* is an unpublished summary order. The Second Circuit has indicated that courts in this Circuit may not rely on its unpublished summary orders as clearly established law to deny qualified immunity. *See Matusick*, 757 F.3d at 61 ("We have specifically cautioned against the reliance on non-precedential summary orders in clearly established analyses [because] [n]on-precedential decisions, by their very definition, do not make law." (internal quotation marks omitted) (citing *Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011))). In addition, the Supreme Court has expressly instructed federal courts "not to define clearly established law at a high level of generality" in excessive force cases and has held that "specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal

doctrine [of] excessive force will apply to the factual situation the officer confronts." *Mullenix v.*

*Luna*, 577 U.S. ---, ---, 136 S. Ct 305, 308 (Nov. 9, 2015) (per curiam) (citations and internal

quotation marks omitted). Thus, putting aside *Beckles*, the Court is left without any clearly

established law holding that it is an unreasonable use of force to handcuff suspects pursuant to

normal handcuffing procedures after they notify law enforcement officers that they have injuries

that would be exacerbated by such handcuffing. The officers are therefore entitled to qualified

immunity on Plaintiffs' excessive force claims. *See Genovese v. Town of Southampton*, 921 F.

Supp. 2d 8, 21–22 (E.D.N.Y. 2013) (granting the defendant officer's motion for summary

judgment on the grounds of qualified immunity due, in part, to a lack of clearly established law

(citing *Beckles*, 492 F. App'x at 182)).

   e.  ***Respondeat Superior***

Relying on the New York common law doctrine of *respondeat superior*, Plaintiffs argue

that the City of New York is vicariously liable for the officers' actions underlying Plaintiffs'

state-law false arrest claims. (Pls. Opp'n 25.) But, as Defendants correctly argue, if the Court

dismisses the underlying state law claims against the officers, the Court should dismiss the

claims against the City of New York as well. (Defs. Mem. 19.)

Under the New York common law doctrine of *respondeat superior*, an employer may be

held liable for the actions of an employee if the employee's actions were foreseeable and within

the scope of employment. *See Doe v. Guthrie Clinic, Ltd.*, 710 F.3d 492, 495 (2d Cir. 2013).

The doctrine of *respondeat superior* has been extended to cities and police departments, allowing

them to be held liable for unconstitutional actions taken by police officers. *See Conte v. Cty. of*

*Nassau*, 596 F. App'x 1, 3 (2d Cir. 2014) (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 339, 349

(2d Cir. 1996); *Norton v. Town of Brookhaven*, 33 F. Supp. 3d 215, 237 (E.D.N.Y. 2014) ("Under

New York state law, municipalities may be held vicariously liable . . . under a theory of *respondeat superior*." (citation omitted)). However, a court should dismiss a plaintiff's *respondeat superior* claims where the plaintiff is not entitled to relief on any of the underlying claims. *See Conte*, 596 F. App'x at 3; *Norton*, 33 F. Supp. 3d at, 237.

Because the Court grants Defendants' motion for summary judgment and dismisses Plaintiffs' state-law false arrest claims, the Court also dismisses the *respondeat superior* claims. *See Conte*, 596 F. App'x at 3 ("[T]he dismissal of [Plaintiffs'] underlying theories of liability eliminate[s] the prospect of vicarious liability." (quoting *Harsco Corp.*, 91 F.3d at 339, 349); *see also Norton*, 33 F. Supp. 3d at 237 ("[H]aving determined that the Plaintiffs fail to state a New York State malicious prosecution claim against the [i]ndividual [d]efendants, the [c]ourt finds that such a claim against the Town based on *respondeat superior* necessarily fails as a matter of law." (citation omitted)).

## II. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment and dismisses the Complaint in its entirety.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 31, 2017
      Brooklyn, New York